UNITED STATES of America,
Plaintiff-Appellee,

v.

Everette Clarence SMITH,
Defendant-Appellant.

No. 78–1962.

United States Court of Appeals,
Ninth Circuit.

Dec. 27, 1978.

Certiorari Denied Feb. 26, 1979.
See 99 S.Ct. 1287.

Carl E. Larson, Asst. Federal Defender, Sacramento, Cal., for defendant-appellant.

Harry E. Hull, Jr., Asst. U. S. Atty., Sacramento, Cal., for plaintiff-appellee.

Before DUNIWAY and SNEED, Circuit Judges, and KELLEHER,* District Judge.

SNEED, Circuit Judge:

Smith appeals his conviction for possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d). The single issue on appeal is the validity of a search warrant that appellant contends was obtained in reliance on an affidavit containing material misstatements made intentionally or recklessly which, when excised, deprived the affidavit of content sufficient to establish probable cause. The district court denied appellant's motion to suppress after a pretrial evidentiary hearing. This court has jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

I.

FACTS.

On July 19, 1977, Special Agent Ohlson of the Bureau of Alcohol, Tobacco and Firearms of the Treasury Department obtained a search warrant for the residence located at 1538 E. Oak Street, Stockton, California. In framing his affidavit, Agent Ohlson relied upon information supplied to him by Detective Sergeant Wagner of the San Joaquin Sheriff's Office, as well as upon infor-

---

* Hon. Robert J. Kelleher, United States District Judge, for the Central District of California, sitting by designation.

mation which Agent Ohlson gathered. Upon execution of the warrant, an unregistered firearm was found and seized. Appellant was indicted for possession of an unregistered firearm on October 26, 1977. At a pretrial hearing on the motion to suppress the weapon, appellant charged that the affidavit submitted by Agent Ohlson contained material misstatements that were intentionally or recklessly made which, when excised, deprived the affidavit of content sufficient to establish probable cause.

It was undisputed that Ohlson's affidavit was inaccurate in several respects.[1] First, the affidavit stated that Wagner told Ohlson that a confidential informant "observed Spencer Scott Connely in possession of three sawed-off shotguns at 1538 E. Oak St. Stockton, California." In fact, the informant had identified the man only by the name "Scott." Further investigation and discussions between Ohlson and Wagner led them to believe that the name "Scott" referred to Spencer Scott Connely, appellant's half-brother.

Second, the affidavit stated that "[t]he informant told Detective Wagner that

---

[1] The complete text of the affidavit reads as follows:

I, Brooks D. Ohlson, being first duly sworn, depose and say:

That I am a Special Agent of the Bureau of Alcohol Tobacco and Firearms, United State's Treasury Department, and that I have been so employed for over six years.

That as a result of my experience and training, I am familiar with the laws pertaining to the possession and manufacture of sawed-off shotguns, which have not been registered in the National Firearms Registration and Transfer Record, Washington D.C.

That on July 18, 1977 I received information from Detective Sgt. Kenneth Wagner, San Joaquin County Sheriffs Office, Stockton, California, who told me that a confidential and reliable informant told him that within the past five days, those being from July 14, 1977 to July 18, 1977, the informant observed Spencer Scott Connely in possession of three sawed-off shotguns at 1538 E. Oak St. Stockton, California. The informant further told Detective Wagner that the shotguns were approximately 18 inches overall in length, had pistol grips, were 12 ga double barrels, and had front grips. The informant told Detective Wagner that Connely told him that 1538 E. Oak St was his residence.

That on July 18, 1977 Detective Wagner told me that the confidential and reliable informant who provided the aforementioned information has provided reliable information to him on at least 30 separate occasions, and that the information has resulted in the arrest and conviction of at least ten persons on various charges including possession of narcotics, sale of narcotics and receiving stolen property. Detective Wagner further told me that the arrests and convictions on the above State of California Penal Code violations took place in San Joaquin County, Stockton, California. Detective Wagner told me that to the best of his knowledge he had never received any false information from this informant.

That on July 19, 1977 I contacted Detective Wagner who told me that Spencer Scott Connley listed his address as 1538 E. Oak St. Stockton, Ca when he was arrested on narcotics charges in that city. Stockton P.D. # 114196. June 1977.

That on July 19, 1977 I received information from Pacific Gas and Electric company, that Evertt C. Smith receives utility service at 1538 E. Oak St Stockton, California, and has received service at that address since April 1977.

That on July 19, 1977 I received further information from Detective Wagner who told me that Evertt C. Smith aka Evertt C. Scott is the half-brother of Spencer Scott Connley.

That on July 19, 1977 I caused a check of the National Firearms Registration and Transfer Records, Bureau of ATF Headquarters, Washington D.C., and was informed that there are no firearms registered to Spencer Scott Connley, or Evertt C. Smith.

That the confidential and reliable informant's identity cannot be disclosed for to do so would place the informant's well being and safety in danger, as well as to preclude the informant's future usefullness as an informant in future investigations.

That it has been by my experience in past investigations, that people in possession of these type weapons, often have ammunition and parts of the weapon on hand and often possess pictures of themselves and or friends in possession of these firearms.

That therefore, I feel that probable cause exists to believe that Spencer Scott Connley is in possession of three unregistered 12 ga double barreled shotguns, being approximately 18 inches overall in length, having pistol grips and having front grips, which were manufactured and are possessed in violation of Chapter 53 Title 26 U.S.C. Sections 5861 d and f, and that these sawed-off shotguns are being stored or possessed at the address listed by Spencer Scott Connley as his residence, 1538 E. Oak St. Stockton, California San Joaquin County, Eastern Judicial District of California.

Connely told him [the informant] that 1538 E. Oak St. was his [Connely's] residence." The informant never made such a statement nor did Wagner report him as having done so. What Wagner had reported to Ohlson was that a check with the Stockton Police Department revealed that Spencer Scott Connely was believed to live at the Oak Street address and that appellant Smith was Connely's half-brother. Moreover, Ohlson had run a check of utility company records and learned that the utilities at 1538 E. Oak Street were registered in the name of appellant Smith.

Third, the affidavit stated that Wagner had informed Ohlson that Connely had "listed his address as 1538 E. Oak St., Stockton, Ca when he was arrested on narcotics charges in that city. Stockton P.D. # 114196. June 1977." This is not quite the way it was. Wagner, in fact, had determined that Connely lived at the Oak Street address from information supplied by the Stockton Police Department, not from any such listing by Connely. Also, although Wagner had reported that Connely had a prior narcotics arrest, he did not state when or where the arrest occurred. Wagner, however, had reported to Ohlson that Connely had a Stockton Police Department number and was the subject of a June 1977 investigation. Ohlson called the Stockton Police Department to verify Connely's police number but did not check the details of the arrest. In fact, Connely had been arrested on narcotics charges in San Diego and had received the Stockton Police number when he moved to Stockton and registered there as a narcotics offender.

Ohlson acknowledged that he had inaccurately recorded some of the information received from Wagner. He emphasized, however, that at the time he prepared the affidavit he believed that he was accurately reporting the information and that he only learned of the inaccuracies subsequent to preparation of the affidavit. The district court denied the motion to suppress, holding both that the misrepresentations by Ohlson were not made intentionally or recklessly, but instead were made in good faith and with the honest belief that the statements

were true, and that the affidavit stated probable cause for the search even if the inaccuracies were excised. After denial of the motion to suppress, Smith waived jury trial, stipulated to possession of an unregistered firearm, and was found guilty. Smith received a suspended sentence and was placed on probation for three years.

## II.

## VALIDITY OF THE SEARCH WARRANT.

■ The Supreme Court's recent decision in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) discussed in some detail the issue whether, and in what circumstances, a false statement by a governmental affiant might invalidate a search warrant. *Franks* held that a defendant is entitled to a hearing on its motion to suppress only after a substantial preliminary showing that a governmental agent intentionally or recklessly made false statements necessary to the finding of probable cause. The search warrant must be voided and the fruits of the search suppressed only when the defendant proves his allegations of intentional or reckless falsity by a preponderance of the evidence and the false statements prove necessary to the finding of probable cause. The Court explicitly recognized that its "reluctance . . . to extend the rule of exclusion beyond instances of deliberate misstatements, and those of reckless disregard, leaves a broad field where the magistrate is the sole protection of a citizen's Fourth Amendment rights, namely in instances where police have been merely negligent in checking or recording the facts relevant to a probable cause determination." *Id.* at 170, 98 S.Ct. at 2684.

■ We have reviewed the transcript of the hearing on the motion to suppress and agree with the district court's conclusion that Ohlson did not intentionally or recklessly include false statements in his affidavit in support of the search warrant. He made certain erroneous assumptions on the basis of the information he received;

but this does not amount to the reckless inclusion of false statements in his affidavit. Having so concluded, no further inquiry into the materiality of the misstatements is either necessary or appropriate. Omissions or misstatements resulting from negligence or good faith mistakes will not invalidate an affidavit which on its face establishes probable cause. *Accord, United States v. Astroff*, 578 F.2d 133 (5th Cir. 1978); *United States v. Barone*, 584 F.2d 118 (6th Cir. 1978).

Accordingly, defendant's conviction is affirmed.

AFFIRMED.