**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Alexander Del Valle GARCIA, aka Alexander Del Valle-Garcia, Defendant-Appellant.**

No. 15-10220

United States Court of Appeals, Ninth Circuit.

Argued October 21, 2016

Resubmitted June 15, 2017 San Francisco, California

Filed June 30, 2017

Adam McMeen Flake, Assistant U.S. Attorney, USLV—Office of the U.S. Attorney, Las Vegas, NV, Elizabeth Olson White, Esquire, Assistant U.S. Attorney, USRE—Office of the US Attorney-Reno, Reno, NV, for Plaintiff-Appellee

Kathleen Bliss, Kathleen Bliss Law, Henderson, NV, for Defendant-Appellant

Before: GRABER and MURGUIA, Circuit Judges, and O'CONNELL,* District Judge.

## MEMORANDUM **

Defendant Alexander Del Valle Garcia and two co-defendants conspired with a confidential informant to rob drugs from a delivery van's driver, by abducting him and stealing his van. When arrested, en route to the crime, police officers discovered, in the cars, a gun, zip ties, duct tape, and gloves. Garcia falsely told the officers that he was driving a friend to apply for a job and that the gloves and duct tape inside the car belonged to the registered owner. A jury convicted Garcia of conspiracy to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951; conspiracy to commit theft in an interstate shipment, in violation of 18 U.S.C. § 371; and making a false statement, in violation of 18 U.S.C. § 1001. The district court then sentenced him to 96 months' imprisonment. We affirm.

■ 1. The district court did not abuse its discretion, United States v. Jenkins, 633 F.3d 788, 807 (9th Cir. 2011), by denying Garcia's motion to sever his trial from his co-defendants' trial. Because all three Defendants were charged with conspiracy, all acts concerning the planned robbery were admissible with respect to all Defendants. Although the trial also pertained to charges of three earlier thefts allegedly committed only by Garcia's co-defendants, the subject matter is not a complicated one that would have made it hard for the jury to compartmentalize. A jury reasonably could be expected to consider the evidence of those three thefts separately, because they involved easy-to-understand actions (thefts of purses and drugs), concerning different victims, on different dates (November 2012, December 2012, mid-March 2013), which preceded the planned robbery (April 8, 2013); the government introduced no evidence that even implied that Garcia was involved in those earlier thefts;[1] and the district court repeatedly gave proper limiting instructions to the jury.

2. The district court did not err by denying Garcia's motion to suppress evidence. The court did not clearly err in finding that Garcia voluntarily consented to the search of his Nissan. See United States v. Bassignani, 575 F.3d 879, 887 (9th Cir. 2009) (holding that we review for clear error whether consent was voluntary). Although there were some factors that weighed against a finding of voluntariness of consent to search the car, other factors weighed in favor of voluntariness, and the court's choice is well supported by the record.

The court also did not err by concluding that Garcia's statements were not taken in violation of Miranda. See United States v. Brobst, 558 F.3d 982, 995 (9th Cir. 2009) ("We review de novo the district court's decision to admit or suppress statements that may have been obtained in violation of Miranda."). To the extent that Garcia challenges Agent Christensen's credibility, the district court did not err in crediting Christensen's testimony.

■ 3. For the reasons stated by the district court, sufficient evidence supported Garcia's convictions on the conspir-

---

* The Honorable Beverly Reid O'Connell, United States District Judge for the Central District of California, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

1. The only exception occurred when a witness misidentified Garcia as the thief in one of the earlier crimes. During closing argument, the government's lawyer asked the jury to disregard that testimony entirely.

acy counts. Evidence supported findings "that [one of the co-defendants] contacted Garcia prior to the scheme and that the two men exchanged a number of phone calls; that Garcia picked up [the confidential informant] on the morning of [the planned heist], and drove him to where [the co-defendants] were parked even th[ough] Garcia and [the informant] had never previously met; that implements of the robbery scheme were found in Garcia's car; and that [the informant] testified that, during their drive to the school parking lot, Garcia expressed his hopefulness that they were going to make a lot of money from the heist."

Sufficient evidence also supported Garcia's conviction on the false-statements count. The jury reasonably could have believed the testimony by the government's witnesses that flatly contradicted Garcia's statements, thus establishing the "falsity" element. See United States v. Stewart, 420 F.3d 1007, 1015 (9th Cir. 2005) ("We must respect the province of the jury to ascertain the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts, by assuming that the jury resolved all such matters in a manner which supports the verdict." (internal quotation marks omitted)).

▇ The jury also reasonably could have concluded that Garcia's statements were "material." "[T]he materiality requirement of a § 1001 violation is satisfied if the statement is capable of influencing or affecting a federal agency." United States v. Serv. Deli Inc., 151 F.3d 938, 941 (9th Cir. 1998). Here, the statements could have influenced the officers' investigation. For example, had the officers believed Garcia's exculpatory statements, they would not have charged him with a crime. The nature of Garcia's statements—what he planned to do that morning and who owned the apparent tools of a planned

robbery—were directly relevant to the government's investigation and determination of whom to prosecute and for what crimes.

4. We reject Garcia's challenges to the district court's rulings on impeachment, for the reasons stated in United States v. Simon, 665 Fed.Appx. 597, 599–600 (9th Cir. 2016) (unpublished), aff'd, 858 F.3d 1289, 1293–94 n.5 (9th Cir. 2017) (en banc).

5. The district court did not err by declining to strike a juror, for the reasons stated in Simon, 665 Fed.Appx. at 600.

6. The government's lawyer did not engage in prosecutorial misconduct during closing argument. The challenged statements, in context, did not comment on Garcia's silence; and the court gave a proper cautionary instruction. See United States v. Mayans, 17 F.3d 1174, 1185 (9th Cir. 1994) ("A prosecutorial statement is impermissible if it is manifestly intended to call attention to the defendant's failure to testify, or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify." (internal quotation marks omitted)).

7. We have carefully reviewed Garcia's assertions of additional trial error, under the heading of "cumulative error," and we conclude that no reversible error occurred.

8. The district court correctly calculated the applicable Guidelines range.

Enhancements for Intended Conduct. For the reasons stated in Simon, 858 F.3d 1289, the district court properly applied the general conspiracy guideline found in U.S.S.G. § 2X1.1. Accordingly, the court properly applied enhancements for Garcia's intended conduct, including the planned abduction, carjacking, and loss amount. U.S.S.G. § 2X1.1(a).

▇ Obstruction of Justice. The court did not abuse its discretion by applying a

two-level enhancement under U.S.S.G. § 3C1.1 for obstruction of justice. Garcia falsely told law enforcement officers that he was driving a friend to apply for a job and that the gloves and duct tape inside the car belonged to the registered owner. Because Garcia was not under oath, in order for this enhancement to apply, "the false statement must constitute an actual impediment, rather than a mere attempt to impede the investigation [or prosecution]." United States v. McNally, 159 F.3d 1215, 1217 (9th Cir. 1998).

We conclude that the district court did not abuse its discretion in concluding that Garcia's lies actually impeded the investigation. Garcia did not simply deny guilt; he lied by saying that he was taking a friend to apply for a job at MGM and that the gloves and duct tape belonged to the registered owner of the car. Officers tracked down, interviewed, and called as witnesses MGM employees and the car's owner in order to refute Garcia's exculpatory statements. None of that investigation would have occurred without Garcia's lies, so it cannot be characterized as "routine" background investigation or otherwise ordinary investigation that would have occurred even without the lies. United States v. Solano-Godines, 120 F.3d 957, 964 (9th Cir. 1997).

■ Possession of a Firearm. The district court did not err by applying a five-level enhancement under U.S.S.G. § 2B3.1(b)(2)(C) for possession of a firearm. Given that the conspiracy's plan was to abduct and rob a delivery driver as he left his home, it was "reasonably foreseeable" that one of Garcia's co-conspirators would possess a gun in the course of the conspiracy. U.S.S.G. § 1B1.3(a)(1)(B).

■ Minimal Participant. The district court did not clearly err, United States v. Tankersley, 537 F.3d 1100, 1110 (9th Cir. 2008), in finding that Garcia qualified for a minor-role reduction under U.S.S.G. § 3B1.2(b) but not a minimal-participant reduction under § 3B1.2(a). Garcia does not appear to have been involved in the planning of the crime but, by arriving at the planned scene of the abduction with gloves and other tools, he was prepared to be a full participant in the crime itself. Cf. United States v. Daychild, 357 F.3d 1082, 1103 (9th Cir. 2004) ("The district court was entitled to decline to view [the defendant] as 'less culpable' within the meaning of U.S.S.G. § 3B1.2 when [he] was directly involved in a central act of the conspiracy, the exchange of drugs for money, merely because there may have been ancillary aspects of the conspiracy unknown to [him].").

**AFFIRMED.**